```
                DISTRICT COURT OF THE VIRGIN ISLANDS
                 DIVISION OF ST. THOMAS AND ST. JOHN

UNITED STATES OF AMERICA,    )
                             )
          Plaintiff,         )
                             )
     v.                      )  Criminal No. 2019-27
                             )
GEORGE SOUFAN,               )
                             )
          Defendant.         )
                             )
```

**ATTORNEYS:**

**Gretchen Shappert, United States Attorney**
**Delia L. Smith, AUSA**
United States Attorney's Office
St. Thomas, U.S.V.I.
   *For the United States of America,*

**Richard Coughlin, Federal Public Defender**
**Gabriel J. Villegas, AFPD**
Office of the Federal Public Defender
St. Thomas, U.S.V.I.
   *For George Soufan.*

## ORDER

**GÓMEZ, J.**

Before the Court is the motion of George Soufan to dismiss the complaint with prejudice, or alternatively, for an order directing release from Immigration and Customs Enforcement custody.

### I. FACTUAL AND PROCEDURAL HISTORY

George Soufan ("Soufan") is a native of Syria. On the evening of March 15, 2019, Soufan entered St. John after arriving by boat from St. Martin. Sometime thereafter, Soufan

took the ferry from St. John to St. Thomas. On March 16, 2019, Soufan surrendered himself to the Virgin Islands Police Department ("VIPD") seeking asylum in the United States. Subsequently, the VIPD referred the matter to the Customs and Border Protection ("CBP") office and the Immigration and Customs Enforcement ("ICE") Enforcement and Removal Operations ("ERO") office in St. Thomas.

On March 18, 2019, the United States filed a criminal complaint charging Soufan with unlawful entry by an alien in violation of 8 U.S.C. § 1325.

On March 20, 2019, the Magistrate Judge held a detention hearing. At the conclusion of that hearing, the Magistrate Judge entered an order setting conditions of release. *See* Order Setting Conditions of Release, ECF No. 8. That order provided for Soufan to be released into the custody of U.S. Probation and his brother Sami Soufan who resides in California. *Id.* at 2.

On March 21, 2019, Soufan filed an emergency motion for release from custody. *See* Emergency Motion for Release, ECF No. 11. In his motion, Soufan stated that, following the Magistrate Judge's order setting conditions of release, ICE and ERO did not lift a previously-issued detainer on Soufan. *Id.* at 2. As a result, Soufan remained confined at the Bureau of Corrections. *Id.* at 2.

On the same day, the Magistrate Judge held a hearing on Soufan's emergency motion for release from custody. At that hearing, the Court heard testimony from Peter Mercurio ("Mercurio"), the Supervisory Detention and Deportation Officer for the St. Thomas ICE ERO Office. Mercurio testified that an ICE detainer was placed on Soufan after his arrest because Soufan is an inadmissible alien. Additionally, Mercurio testified that Soufan was issued an expedited removal by CBP. Mercurio explained that an expedited removal is an order of removal, and that, as such, Soufan has already been ordered removed from the United States. Mercurio testified that ICE kept the detainer in place to further vet Soufan and facilitate his asylum claim.

On March 22, 2019, Soufan filed a motion to dismiss the complaint with prejudice, or alternatively, for an order directing release from Immigration and Customs Enforcement custody. Soufan argues that "the Executive Branch cannot . . . use its immigration authority to detain Mr. Soufan while pursuing its criminal case against him, in contravention of the Bail Reform Act." *See* Motion to Dismiss or, Alternatively, Motion for an Order Directing Release from ICE Custody at 4, ECF No. 16.

On April 4, 2019, a federal grand jury returned an indictment against Soufan. The indictment charges Soufan with one count of illegal entry in violation of Title 8, United States Code, Section 1325(a).

## II. DISCUSSION

"[T]his country's border-control policies are of crucial importance to the national security and foreign policy of the United States." *United States v. Delgado-Garcia*, 374 F.3d 1337, 1345 (D.C. Cir. 2004). "Agencies in the Department of Homeland Security play a major role in enforcing the country's immigration laws." *Arizona v. United States*, 567 U.S. 387, 397 (2012). Immigration and Customs Enforcement ("ICE") is a bureau within the larger Department of Homeland Security ("DHS"). Among other responsibilities, ICE is tasked with enforcement of the immigration laws of the United States. Those laws provide parallel civil and criminal tracks for addressing the illegal entry of aliens into the United States.

On the civil side, when an alien enters the United States without inspection, the law treats that alien as an applicant seeking admission into the United States.

> An alien present in the United States who has not been admitted or who arrives in the United States (whether or

> not at a designated port of arrival . . .) shall be deemed . . . an applicant for admission.

8 U.S.C. § 1225(a)(1). Applicants for admission are subject to inspection by an immigration official.

Upon inspection, "an immigration officer [may] determine[] that an alien . . . is inadmissible." 8 U.S.C. § 1225(b)(1)(A)(i). When an immigration official determines that an alien is inadmissible,

> the officer shall order the alien removed from the United States without further hearing or review unless the alien indicates either an intention to apply for asylum under section 1158 . . . or a fear of persecution.

*Id.* At the same time, if the alien intends to make a claim for asylum, the asylum claim is reviewed by an asylum officer.

A determination by an asylum officer that an asylum claim ought to be denied, may be reviewed by an immigration judge[1]. During the pendency of an asylum claim, the alien claimant is

---

[1] The term "immigration judge" means an attorney whom the Attorney General appoints as an administrative judge within the Executive Office for Immigration Review, qualified to conduct specified classes of proceedings, including a hearing under section 1229a of this title. An immigration judge shall be subject to such supervision and shall perform such duties as the Attorney General shall prescribe, but shall not be employed by the Immigration and Naturalization Service.

8 U.S.C. § 1101(b)(4).

required to be detained pending a final determination or until removed. 8 U.S.C. § 1225(b)(1)(B)(iii)(IV).[2]

Significantly, the proceedings that unfold following the illegal entry of an alien into the United States, including the assessment of any asylum claim, may occur entirely within the province of the Executive. That civil administrative protocol is separate and apart from any criminal proceeding that *may* unfold before the judiciary. *See, e.g., Immigration & Naturalization Serv. v. Lopez-Mendoza*, 468 U.S. 1032, 1038, 104 S. Ct. 3479, 3483 (1984) ("A deportation proceeding is a purely civil action to determine eligibility to remain in this country, not to punish an unlawful entry, though entering or remaining unlawfully in this country is itself a crime") (citations omitted).

In a criminal proceeding, the Bail Reform Act ("BRA"), 18 U.S.C. §§ 3141 *et seq.*, authorizes and sets forth the procedures for a judicial officer to order the release or detention of an arrested person pending trial, sentence, and appeal. Section

---

[2] Removal proceedings ordinarily are conducted by an immigration judge. *See generally* 8 U.S.C. § 1229a. To the extent such proceedings are undertaken and a removal order is issued,
> [d]uring the removal period, the Attorney General shall detain the alien. Under no circumstance during the removal period shall the Attorney General release an alien who has been found inadmissible under section 1182(a)(2) or 1182(a)(3)(B) or deportable under section 1227(a)(2) or 1227(a)(4)(B) of this title.

8 U.S.C.S. § 1231(a)(2).

3142, Title 18, of the United States Code ("Section 3142") provides for release or detention of a defendant pending trial. A defendant is to be either detained or released--upon personal recognizance, bond, or conditions--based on a determination of whether release "will reasonably assure the appearance of the person as required and the safety of any other person and the community." *See* 18 U.S.C. §§ 3142(b),(c),(e),(f),(g).

Significantly, immigration proceedings and criminal actions may occur in parallel. *Cf. Witter v. INS*, 113 F.3d 549, 555 (5th Cir. 1997) (discussing a petitioner's Fifth Amendment privilege in the context of parallel immigration and criminal proceedings). "Detention of a criminal defendant pending trial pursuant to the BRA and detention of a removable alien pursuant to the INA are separate functions that serve separate purposes and are performed by different authorities." *United States v. Vasquez-Benitez*, Nos. 18-3076, Consolidated with 18-3080, 2019 U.S. App. LEXIS 8966, at *12 (D.C. Cir. Mar. 26, 2019). "ICE's detention [of an inadmissible alien] does not offend separation-of-powers principles simply because a federal court, acting pursuant to the BRA, has ordered that same alien released pending his criminal trial." *Id.* at *12.

> Individuals are detained under the BRA under authority separate from that used to detain individuals under the INA. A criminal defendant is detained under the BRA to ensure his presence at his criminal trial and the safety

>     of the community. An illegal alien is detained under the
>     INA to facilitate his removal from the country. ICE's
>     authority to facilitate an illegal alien's removal from
>     the country does not disappear merely because the U.S.
>     Marshal cannot detain him under the BRA pending his
>     criminal trial.

*Id.* at *13 (citations omitted).

As such, an appropriate, though different, detention determination may be made by each authority.

In *United States v. Veloz-Alonso*, 910 F.3d 266 (6th Cir. 2018), Cesar Veloz-Alonso ("Veloz-Alonso") entered the United States illegally. Subsequently, Veloz-Alonso was detained by ICE. *Veloz-Alonso*, 910 F.3d at 267. Veloz-Alonso was indicted on a charge of illegal reentry in violation of 8 U.S.C. § 1326. *Id.* Subsequently, Veloz-Alonso pled guilty and moved for release on bail pending sentencing. *Id.* The district court granted the motion for release. *Id.* Relying on *United States v. Trujillo-Alvarez*, 900 F. Supp. 2d 1167 (D. Or. 2012) and a line of similar district court opinions, the district court found that "the BRA supersedes the Immigration and Naturalization Act during an Article III adjudication." *Id.* at 268. "As part of its order granting release, the district court ordered the government, under threat of contempt, 'to refrain from detaining or deporting the Defendant while he is released pending sentencing.'" *Id.*

The Sixth Circuit reversed the order of the district court. *Id.* at 267. Noting that "[t]he precise issue before us today has never been directly addressed by our sister circuits or the Supreme Court," the Sixth Circuit rejected the reasoning of *Trujillo-Alvarez* and similar cases.[3] *Id.* at 268.

First, the Sixth Circuit explained that, under Supreme Court precedent, "[a] long-established canon of statutory interpretation instructs that, 'when two statutes are capable of co-existence, it is the duty of the courts, absent a clearly expressed congressional intent to the contrary, to regard each as effective . . . .'" *Id.* (quoting *Morton v. Mancari*, 417 U.S. 535, 551 (1974)). Discussing 18 U.S.C. § 3143 ("Section 3143"), the section of the BRA under which the district court ordered Veloz-Alonso's release pending sentencing, the Sixth Circuit noted that "Section 3143 imports much of the language of § 3142"

---

[3] The Sixth Circuit explained that such cases
> find that when the government has detained an illegal alien, "[T]he Executive has a choice to make. It may take an alien into custody for the purpose of removing or deporting that individual or it may temporarily decline to do so while criminal proceedings are maintained against that person." Other cases in this line find the same binary framework. "The Executive branch should decide where its priorities lie: either with a prosecution in federal district court or with removal of the deportable alien." This framework creates a problem when the government attempts to pursue both options simultaneously. When those pursuits come into tension, courts following the *Trujillo-Alvarez* framework have held that once an alien is submitted for criminal prosecution, the statutory permissions of the BRA supersede the statutory mandates of the INA.

*Veloz-Alonso*, 910 F.3d at 268 (citations omitted).

which "specifically contemplates the release of illegal aliens."

*Id.* at 269. Accordingly, the Sixth Circuit found that "[t]he pretrial or presentencing release of illegal aliens is clearly *permitted* under BRA." *Id.*

> [H]owever, nothing in the BRA prevents other government agencies or state or local law enforcement from acting pursuant to their lawful duties. Rather, the BRA imposes a presumption of detention for criminal defendants pending trial (§ 3142) or sentencing (§ 3143) that defendants must overcome by a showing of "clear and convincing evidence." Release of a criminal defendant is permissive after such a showing.

*Id.* Explaining that "ICE is under mandatory instruction to detain and deport an alien illegally reentering after a final removal order," *id.*, the Sixth Circuit concluded that there is

> no conflict between the BRA and INA in the manner which the *Trujillo-Alvarez* cases and the district court here ruled. The BRA presumes detention but allows for the permissive release of a criminal defendant. The INA mandates the detention of certain illegal aliens. Reading the BRA's permissive use of release to supersede the INA's mandatory detention does not follow logically nor would doing so be congruent with our canons of statutory interpretation. One of the primary purposes of the BRA is to ensure the appearance of criminal defendants at judicial proceedings. To the extent that ICE may fulfill its statutory mandates without impairing that purpose of the BRA, there is no statutory conflict and the district court may not enjoin the government's agents.

*Id.* at 270. Thus, the Sixth Circuit held that the district court's holding--"that because 'the United States has determined that prosecuting this case is more important than immediate deportation,' the government must suspend its administrative

actions under the INA until the conclusion of the judicial proceedings"--was incorrect as a matter of law. *Id.*

In *United States v. Vasquez-Benitez*, Nos. 18-3076, Consolidated with 18-3080, 2019 U.S. App. LEXIS 8966 (D.C. Cir. Mar. 26, 2019), the United States Court of Appeals for the D.C. Circuit was faced with a similar issue as that presented in *Veloz-Alonso*. In *Vasquez-Benitez*, the trial court prohibited the U.S. Marshal Service from returning an alien to ICE because the trial court wanted to avoid detention of the alien by the Executive. *Id.* at *15-16. On appeal, the D.C. Circuit agreed with the Sixth Circuit in *Veloz-Alonso*. *Id.* The D.C. Circuit held that "the district court erred in prohibiting the U.S. Marshal from returning Vasquez-Benitez to ICE based on the mistaken belief that 'the BRA provides the exclusive means of detaining a defendant criminally charged with illegal reentry.'" *Id.* (citations omitted).

This Court is persuaded by the position taken by the D.C. Circuit and the Sixth Circuit. There is no conflict between (1) the continued detention of Soufan by the Attorney General during the pendency of any civil removal proceeding and (2) the Magistrate Judge's pretrial release order in the instant criminal matter. Indeed, where, as here, an alien is a defendant in the criminal prosecution of a violation of 8 U.S.C. § 1325,

Congress has specifically proscribed an attack by the alien on the validity of a civil immigration removal order in the criminal action.

> In any action brought against an alien under section 1325(a) of this title or section 1326 of this title, the court shall not have jurisdiction to hear any claim attacking the validity of an order of removal entered under subparagraph (A)(i) or (B)(iii).

8 U.S.C. § 1225(b)(1)(D).

### III. CONCLUSION

"Every day, immigration officials must determine whether to admit or remove the many aliens . . . who have been apprehended trying to enter the country at an unauthorized location." *Jennings v. Rodriguez*, 138 S. Ct. 830, 836 (2018).

> The vast majority of these determinations are quickly made, but in some cases deciding whether an alien should be admitted or removed is not as easy. As a result, Congress has authorized immigration officials to detain some classes of aliens during the course of certain immigration proceedings. Detention during those proceedings gives immigration officials time to determine an alien's status without running the risk of the alien's either absconding or engaging in criminal activity before a final decision can be made.

*Jennings*, 138 S. Ct. at 836.

At its core, Soufan's petition challenges the authority of the Executive to implement and enforce immigration policy and laws through administrative processes. Soufan urges the Court to impose a preliminary magistrate judicial decision in a criminal

matter as a dispositive and controlling conclusion in an administrative matter. The Court must decline that petition.

The civil administrative adjudicative process in which Soufan is involved, in the first instance, is within the purview of the Executive. Such civil immigration proceedings undertaken by ICE implicate "border-control policies [that] are of crucial importance to the national security and foreign policy of the United States," *Delgado-Garcia*, 374 F.3d at 1345, just as much as their criminal immigration counterparts in this Court. As the two parallel proceedings "serve separate purposes and are performed by different authorities," *Vasquez-Benitez*, 2019 U.S. App. LEXIS 8966, at *12, the concomitant criminal prosecution of Soufan in this court while he is detained and subject to civil removal proceedings is an appropriate exercise of executive prerogative.

The premises considered, it is hereby

**ORDERED** that George Soufan's motion to dismiss or alternatively, for an order directing release from Immigration and Customs Enforcement custody, ECF No. 16, is **DENIED**.

S\_____
**Curtis V. Gómez
District Judge**